```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
VIRGIN ENTERPRISES LIMITED,                :    08 CV 8564 (LAP)
                                           :
                        Plaintiff,         :    MEMORANDUM & ORDER
                                           :
        -against-                          :
                                           :
VIRGIN EYES LLC. AND STEPHEN               :
GATTO,                                     :
                                           :
                        Defendants.        :
------------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

    Plaintiff Virgin Enterprises Limited ("VEL") brings this action seeking damages and injunctive relief against Defendants Virgin Eyes, L.L.C. ("Virgin Eyes") and Stephen Gatto ("Gatto") for alleged trademark infringement and dilution in violation of 15 U.S.C. §§ 1051 et seq., New York General Business Law § 360-1, and New York common law, as well as cybersquatting in violation of 15 U.S.C. § 1125(d)(1)(A). Virgin Eyes and Gatto now move to dismiss the claims pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. For the reasons set forth below, the motion is GRANTED.

1

I.  BACKGROUND

Although discovery has not yet begun, the parties have submitted memoranda of law and affidavits in support of their respective positions as to whether this Court has personal jurisdiction over the Defendants.  In addition to the Complaint, the Court has thus considered the Declaration of James W. Dabney, sworn to December 15, 2008 ("Dabney Decl.") and proffered on behalf of the Plaintiff, as well as the Affidavit of Defendant Stephen Gatto, sworn to November 13, 2008 ("Gatto Aff.").[1]

According to the Complaint, VEL is a corporation organized and existing under the laws of England and Wales with its principal office in London. (Compl. ¶ 1.)  VEL and related companies, collectively known as the Virgin Group, conduct numerous businesses in more than twenty-nine countries, including the United States, and employ more than 50,000 people.[2]  (Id. ¶ 6.)  By way of example, Virgin Group businesses include, but are not limited to, air travel, limousine services, entertainment retail stores,

---

[1] In considering a motion to dismiss for lack of personal jurisdiction, a court "may consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 50 n.54 (S.D.N.Y. 1999).

[2] Data is from the year ending December 31, 2006. (Compl. ¶ 2.)

wireless services, credit card services, clothing, hats, vodka, and toys. (Id. ¶¶ 6-21.)  All of the businesses use the trade name, trademark and service mark "Virgin." (Id. ¶ 6-21.)  According to the Dabney Declaration, although the Virgin Group conducts multiple businesses in the U.S, New York is the only state in which VEL has a domestic representative for service of process. (See Dabney Decl. ¶ 12.)

Defendant Virgin Eyes is a corporation organized and existing under the laws of Michigan, with its primary place of business located in Lansing, Michigan. (Compl. ¶ 2.) Gatto, a Michigan resident, is the founder and manager of Virgin Eyes. (See id. ¶¶ 3, 35; Gatto Aff. ¶ 2.)  Gatto allegedly registered the domain name "virgineyes.com" (the "Website") to facilitate "online retailing and advertising services featuring eye-related goods." (Id. ¶ 25.)  He also caused Virgin Eyes to seek registration of "Virgin Eyes" as its trademark. (Id. ¶ 26.)

The gravamen of the Complaint is that Defendants used the Website to operate a "deceptively named, 'pay-per-click' . . . business . . . designed to profit from preexisting public awareness of, and goodwill associated with, the Virgin trademark." (Id. ¶ 28.)  To this end, Defendants have allegedly contracted with third parties to

3

supply online retailing "to persons located in the State of New York and throughout the United States." (Id. ¶ 29.) Such conduct "likely" would damage VEL and would threaten "VEL with irreparable harm." (Id. ¶¶ 36-37.)

Exhibits 1 and 3 of the Dabney Declaration provide copies of webpages from the offending Website as of September 30, 2008 and July 24, 2008, respectively.[3] (See Dabney Decl. ¶ 2.) On the left-hand side of these webpages are links entitled "Eyeglasses/Sunglasses" and "Accessories." (Id., Ex. 1.) In the center of each is a section entitled "Brief History of Eyeglasses, Sunglasses, and Lenses" and instructions for using the links on the left to retrieve product information and purchase items. (Id.) Gatto avers, and VEL has not disputed, that these links were not functional and that no product orders could be placed through them. (Gatto Aff. ¶¶ 8, 10.)

The right hand side of Exhibits 1 and 3 displays a strip of advertisements under the heading "Ads By Google" providing active links to other websites purporting to sell eyeglasses. Exhibits 2 and 4 contain "Whois" records for two of the links provided in the "Ads by Google" column

---

[3] The Dabney Declaration also includes as Exhibit 6 a picture of a page on the Website as of August 7, 2008 which appears to be formatted differently from those displayed in Exhibits 1, and 3. However, the typeface is so small as to render it unreadable.

4

indicating that their domain names were registered in New York.

Defendants now move to dismiss the Complaint on the ground that this Court lacks personal jurisdiction over them because they neither reside in New York nor solicit business from New York residents.

II.  DISCUSSION

   A.   Standard of Review

District courts resolving issues of personal jurisdiction must engage in a two-part analysis. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). First, a district court must determine whether, under the laws of the forum state (here, New York), there is jurisdiction over the defendant. Id. "Second, [it] must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." Id. Where personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). Prior to conducting discovery, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials to defeat a motion to dismiss. See

PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

    B.    New York's Long-Arm Statute

Defendants are non-domicilaries of the State of New York. (Compl. ¶¶ 2-3.) New York's long-arm jurisdiction statute provides four alternatives which a court may exercise personal jurisdiction over a non-domiciliary.[4] The statute provides, in pertinent part, that a New York court has jurisdiction over a non-domiciliary who in person or through an agent:

> 1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2.    commits a tortious act within the state . . .; or
>
> 3.    commits a tortious act without the state causing injury to person or property within the state . . . if he
>
>> (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

---

[4] Here, N.Y.C.P.L.R. 302(a)(4) is inapplicable as Plaintiff has not alleged that Defendants own, use, or possess property in New York.

6

N.Y.C.P.L.R. 302(a) (McKinney 2001). VEL argues that the Court has jurisdiction over Defendants under each of these provisions, which are discussed in turn.

      i.    Section 302(a)(1)

A court may exercise personal jurisdiction over a non-domiciliary pursuant to § 302(a)(1) if two conditions are met: first, the non-domiciliary must "transact business" within the state; second, the claim against the non-domiciliary must arise out of that business activity. See McGowan v. Smith, 52 N.Y.2d 268, 272 (1981) (an "articulable nexus between the business transacted and the cause of action sued upon" is essential). "A non-domiciliary "transacts business" under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967) (internal quotations and citations omitted)). In determining whether a defendant has satisfied the "purposely availed himself" requirement, thus making the exercise of jurisdiction proper, courts look to the "totality of all defendant's contacts with the forum state." Id.

7

Here, VEL makes only one conclusory allegation that "defendants . . . transacted businesses (sic) with one or more persons located in New York . . . ." (Compl. ¶ 31.) Such unsubstantiated assertions fail to meet even the minimal prima facie showing required to establish personal jurisdiction under § 302(a)(1). See Liaros v. Vaillant, No. 93 Civ. 2370, 1996 WL 88559, *5 (S.D.N.Y. Mar. 1, 1996) (noting that conclusory allegations of transacting business, without more, "cannot suffice to establish personal jurisdiction under section 302(a)(1)"). Moreover, in the context of internet activities, the New York Court of Appeals has yet opine on what actions would constitute personal jurisdiction under § 302. See Siegel, New York Practice § 86 (4th ed. 2005). However, courts in this district have "identified a spectrum of cases involving a defendant's use of the internet." Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). The spectrum ranges from "passive" websites—those in which the defendant "makes information available"—to websites where the defendant "clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states." Id. Websites that permit the exchange of information between the defendant and a user in another state, or "interactive"

websites, may confer jurisdiction "depending on the level and nature of the exchange." Id.

Defendant's website was, at best, minimally functional. (Gatto Aff. ¶¶ 6-8.) The Complaint makes no mention of whether Gatto sold items through his website, or whether he engaged in the active "exchange of information." Instead, the website provided hyperlinks "that were originally intended to link to pages containing indexes of sunglass brands [and] were not fully functional." (Id. ¶ 8.) The mere fact that the website was available for anyone (specifically, a New York resident) to view, is "insufficient to sustain jurisdiction, even where [the website contains] an interactive component." Best Van Lines, Inc. v. Walker, No. 03 Civ. 6585, 2004 WL 964009, *5 (S.D.N.Y. May 5, 2004) (citing GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000)).

Additionally, advertising--even advertising directed at New York residents--is not enough to give this Court personal jurisdiction over Defendants. See Maranga v. Vira, 386 F. Supp. 2d 299, 308 (S.D.N.Y. 2005) ("The placement of advertising in a newspaper that is published in New York adds little justification for the assertion of personal jurisdiction under § 302(a)(1)."). Advertisements will be sufficient to confer jurisdiction if the

9

advertisements are "supplemented by business transactions occurring in the state . . . or . . . accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." O'Brien v. Hackensack Univ. Med. Ctr., 305 A.D.2d 199, 201 (N.Y. App. Div., 1st Dep't, 2003). Because no business transactions supplemented the advertisements on Defendant's website, § 302(a)(1) cannot confer personal jurisdiction.

      ii.  Section 302(a)(2)

A court will have personal jurisdiction over a defendant, pursuant to § 302(a)(2), if the defendant "commits a tortious act within the state." N.Y.C.P.L.R. § 302(a)(2). Although Plaintiff cites several New York Supreme Court cases holding that a defendant need not be present in New York for § 302(a)(2) to apply (see Plaintiff's Opp. Br. at 10-12), the New York Court of Appeals has interpreted the subsection to reach only tortious acts performed by a defendant who was physically present in New York when he committed the act. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 460 (1965) ("Any possible doubt on this score is dispelled by the fact that the draftsmen of section 302 pointedly announced that their purpose was to confer on the court 'personal jurisdiction' over a non-domiciliary whose

act in the state gives rise to a cause of action or, stated somewhat differently, 'to subject non-residents to personal jurisdiction when they commit acts within the state'.") (citations omitted). Furthermore, in Bensusan Rest. Corp. v. King, the Court of Appeals declined to deviate from the New York Court of Appeals' decision in Longines-Wittnauer recognizing that it would be "impolitic . . . to hold otherwise." 126 F.3d 25, 29 (2d Cir. 1997). In Bensusan, the court determined that tortious acts committed by defendants, who were non-domiciliaries and created a website containing allegedly trademarked words, were deemed to have been committed where the website was created (which, in that case, was Missouri). Id.; see also Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) (listing courts that have held that "in the case of web sites displaying infringing marks the tort is deemed to be committed where the web site is created and/or maintained"). Thus, the court concluded that since the tort was committed outside New York, jurisdiction under § 302(a)(2) was inappropriate. Id.

Here, Plaintiff does not allege that Defendants committed the tortious acts in New York. In fact, Plaintiff's Opposition Brief argues at length that this Court should follow the trend of the lower New York state

11

courts and find that physical presence by the Defendant in New York is not necessary for § 302(a)(2) to apply. To do so, however, would be improper, not to mention impolitic. Section 302(a)(2) states that the tort must take place "within the state," and the New York Court of Appeals has interpreted the statute literally. Accordingly, this Court lacks personal jurisdiction over Defendants pursuant to § 302(a)(2).

### iii. Section 302(a)(3)

In order to make a showing of jurisdiction under 302(a)(3)(i), the plaintiff must establish: (1) that defendant committed a tortious act outside of New York state, (2) that plaintiff's cause of action arises from that act, (3) that the act caused injury to a person or property within New York State, and (4) that defendant regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state. See LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 215 (2000); Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 575 (S.D.N.Y. 2006).[5] "Under § 302(a)(3), each element is 'essential,' and if plaintiffs fail to proffer

---

[5] Plaintiff does not argue, and this Court therefore will not consider, that jurisdiction is proper pursuant to § 302(a)(3)(ii).

12

sufficient evidence for any element, 'it is dispositive of the issue' of personal jurisdiction under this provision. Overseas Media, Inc., 407 F. Supp. 2d at 575 (quoting Trafalgar Capital Corp. v. Oil Producers Equip. Corp., 555 F. Supp. 305, 310 (S.D.N.Y. 1983) (abrogated on other grounds)).

Here, Plaintiff alleges that Defendants have: (1) "contracted with one or more third parties to supply deceptive, VIRGIN EYES online advertising and retailing services to persons located in the State of New York"; (2) "transacted business with one or more persons located in New York"; and (3) "[caused confusion, caused mistake, or deceived] as to the affiliation, connection, or association of [Defendants] with [Plaintiff], or as to the origin, sponsorship, or approval by [Plaintiff] of [Defendants'] services or commercial activities. (Compl. ¶¶ 29, 31, 34.) Assuming all of Plaintiff's allegations are true, Plaintiff has satisfied the first three elements necessary to acquire jurisdiction pursuant to § 302(a)(3)(i). As discussed supra, Defendants' alleged trademark infringement is a tort that is considered to have been committed in Michigan and has caused injury in New York.[6] See American Network, Inc.

---

[6] Courts determining "whether there is injury in New York sufficient to warrant § 302(a)(3) (cont'd on next page)

v. Access America/Connect Atlanta, Inc., 975 F. Supp. 494, 497 (S.D.N.Y. 1997) ("[T]he requirement of injury 'within the state' is met by plaintiff's claims of harm and threatened harm in the New York market resulting from the confusion and deception of New York computer users."). Plaintiffs fail, however, to satisfy the final element required under § 302(a)(3)(i).

Plaintiff's conclusory allegation that "defendants regularly solicit business in the State of New York by means of a deceptively named, VIRGIN EYES 'pay-per-click' online retailing and advertising business that falsely suggests or implies a connection, association, or affiliation with VEL," Compl. ¶ 32, is insufficient to confer jurisdiction. See Pitbull Prods., Inc. v. Universal Netmedia, Inc., No. 07-cv-1784, 2008 WL 1700196, *7 (S.D.N.Y. Apr. 4, 2008) ("[Plaintiff's] (conclusory)

---

(cont'd from previous page) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999) (quoting Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 683 (N.Y. App. Div., 2d Dep't, 1987)). The "original event" occurs "where the first effect of the tort . . . that ultimately produced the final economic injury" is located. Id. at 792. In trademark cases, the "first effects" of trademark infringement or dilution "are typically felt where the trademark owner resides and conducts business." Savage Universal Corp. v. Grazier Constr., Inc., No. 05 Civ. 1089, 2004 U.S. Dist. Lexis 16088, at *30 (S.D.N.Y. Aug. 12, 2004).

allegations [that Defendant regularly solicits business in New York] fail to satisfy CPLR 302(a)(3)(i).").  Moreover, the fact that Defendants' website is accessible to New York residents simply does not constitute the kind of conduct required under § 302(a)(3)(i).  See Ingraham v. Carroll, 90 N.Y.2d 592, 598 (1997); Telebyte, Inc. v. Kendaco, Inc., 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) ("[T]he mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction." (citing Bensusan, 126 F.3d at 29)); see also GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (analyzing nearly identical long-arm statute and concluding that "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District").  By maintaining a largely passive, semi-functional website focused on providing information about sunglasses, Defendants cannot be said to have had "sufficient contacts with this state so that it is not unfair to require them to answer in this state for injuries they cause here by acts done elsewhere." Ingraham, 90 N.Y.2d at 597.  Accordingly, this Court may not exercise personal jurisdiction over

defendants pursuant to § 302(a)(3)(i).

C. Due Process Analysis

Because Plaintiff has failed to establish a prima facie showing of jurisdiction under New York's long-arm statute, the Court need not address whether jurisdiction comports with federal due process.

CONCLUSION

Plaintiff's failure to establish a prima facie showing of jurisdiction under New York State law precludes this Court from exercising personal jurisdiction over Defendants. Accordingly, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction [dkt. no. 12] is GRANTED. The Clerk of the Court shall mark this action CLOSED and all pending motions DENIED as moot.

SO ORDERED:

Dated: New York, New York
       September 30, 2009

*Loretta A. Preska*
LORETTA A. PRESKA, Chief U.S.D.J.